UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MPDS MEMPHIS LTD., dba EMERALD OVERLOOK APARTMENTS, <br>            Plaintiff, <br><br> vs. <br><br> STATE FARM FIRE AND CASUALTY COMPANY, <br>            Defendant. | CASE NO. 1:10CV749 <br><br> JUDGE CHRISTOPHER A. BOYKO <br><br> **OPINION AND ORDER** |

**CHRISTOPHER A. BOYKO, J.**:

      This matter comes before the Court upon the Renewed Motion (ECF DKT #59) of Defendant, State Farm Fire and Casualty Company ("State Farm"), for Summary Judgment and State Farm's Motion to Exclude Evidence regarding Additional Damages. For the following reasons, the Motion for Summary Judgment is granted in part and denied in part, and the Motion to Exclude is denied.

**I. BACKGROUND**

      Plaintiff, MPDS Memphis, Ltd. ("MPDS"), owns an apartment complex in Cleveland known as Emerald Overlook Apartments ("Property"). The Property contains approximately one hundred twenty residential units. MPDS obtained an insurance policy from State Farm,

which covered both property damage and lost income. ("Policy"). On February 29, 2008, Cleveland suffered a major snow storm. The roof of the Property collapsed, rendering nearly thirty-seven upper-level units uninhabitable and causing water damage to additional lower-level units. On March 1, 2008, Michael Priore, the Property's managing agent, filed a claim with State Farm seeking coverage for (1) roof repair or replacement, (2) internal property damage, and (3) lost rental income. After significant time and back-and-forth negotiations, State Farm paid MPDS a total of $1,088,877.87 for losses covered by the Policy.

MPDS disputed that the entire loss had been covered by the State Farm payment and filed suit in Cuyahoga County Common Pleas Court, alleging breach of contract, breach of the covenant of good faith, breach of fiduciary duty, negligent misrepresentation, and simple negligence. State Farm removed the matter to federal court based upon diversity jurisdiction. Following discovery and failed attempts at settlement, State Farm filed a summary judgment motion which this Court granted on all of MPDS's claims.

Upon independent review of the only claims taken up on appeal, the Sixth Circuit Court of Appeals affirmed with respect to the claim for breach of the covenant of good faith and reversed with respect to the claim for breach of contract.

Now, in its Renewed Motion for Summary Judgment (ECF DKT #59), State Farm contends that it is entitled to judgment on the breach of contract claim because it paid all amounts due under the Policy. For its part, MPDS insists that there are unpaid claims for interior repairs totaling $81,414.49; a construction supervision fee of $60,000.00; $32,000.00 in emergency repairs to the roof and interior; and other consequential damages.

## II. LAW AND ANALYSIS

**Standard of Review**

A summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(a).  The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir.1994).  The moving party must do so by either pointing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or by "showing that the materials cited (by the adverse party) do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  See Fed.R.Civ.P. 56(c)(I)(a), (b).  A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim.  *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact.  *Betkerur v. Aultman Hospital Ass 'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir.1992).  The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute,"

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F. 3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**Applicable law**

A federal court sitting in diversity must apply the substantive law of the forum state.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir.2000).

**Contract Interpretation**

The Supreme Court of Ohio has instructed that "insurance contracts must be construed in accordance with the same rules as other written contracts."  *Hybud Equip. Corp. v. Sphere Drake Ins. Co.*, 64 Ohio St.3d 657, 597 N.E.2d 1096, 1102 (1992), *cert. denied*, 507 U.S. 987, 113 S.Ct. 1585, 123 L.Ed.2d 152 (1993).  Furthermore, "words and phrases used in an insurance policy must be given their natural and commonly accepted meaning *** to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined."  *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 436 N.E.2d 1347, 1348 (1982).

The Court interprets the contract as a whole.  *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 219 (2003).  "If the language used by the parties [in a contract] is plain, complete,

and unambiguous, the intention of the parties must be gathered from that language, and from that language alone." Williston on Contracts § 31:4. Whether a contract is ambiguous is a matter of law for the court. *Latina v. Woodpath Dev. Co.*, 57 Ohio St.3d 212, 214 (1991). Any ambiguity must appear on the face of the contract; and extrinsic evidence cannot render an otherwise unambiguous contract provision ambiguous. *Shifrin v. Forest City Enterprises, Inc.*, 64 Ohio St.3d 635, 638 (1992). "When the terms of the contract are clear and unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Id*. In a fully integrated agreement, intentions not expressed in the writing are deemed to have no existence, and may not be shown by parol evidence. *Construction Interior Systems, Inc. v. Marriott Family Restaurants, Inc.*, 984 F.2d 749, 754 (6th Cir. 1993) (quoting *Aultman Hosp. Ass'n v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51 (1989)) (interior citations omitted).

**Contract Damages**

The general measure of damages in a contract action is the amount necessary to place the non-breaching party in the position he or she would have been in had the breaching party fully performed under the contract. *F. Enterprises, Inc. v. Kentucky Fried Chicken Corp.*, 47 Ohio St.2d 154, 159 (1976); *Allied Erecting and Dismantling Company v. City of Youngstown*, 151 Ohio App.3d 16, 783 N.E.2d 523, 535 (Ohio Ct.App. 7th Dist. Mahoning County 2002). Damages for breach of contract are those that are the natural or probable consequences of breach or damages resulting from breach that were within the contemplation of both parties at the time of the making of the contract. *Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866 (6th Cir.2007)(applying Ohio law); *Midvale Coal Co. v. Cardox Corp.*, 152 Ohio St. 437

(1949).  Contract damages must flow naturally and proximately from the breach.  *Eckel v. Bowling Green State Univ.*, 974 N.E.2d 754 (Ohio Ct.App. 10th Dist. Franklin County 2011).

**The State Farm Policy**

The State Farm Policy issued to MPDS requires State Farm to pay "the least of ... the cost to replace the lost or damaged property on the same premises" or "the amount you actually spend that is necessary to repair or replace the lost or damaged property."  (ECF DKT #45-5, at 1024).  The insured must "permit [State Farm] to inspect the property and records proving the loss."  *Id*. at 1025.  The insurer "will not pay for any loss on a replacement cost basis until the lost or damaged property is actually repaired or replaced and then, only if the repairs or replacement are made as soon as reasonably possible after the loss."  *Id*. at 1024. The insured is required to cooperate in the investigation or settlement of the claim and to "set the damaged property aside and in the best possible order for examination."  *Id*. at 1025.

**State Farm's Motion to Exclude**

Initially, the Court will address State Farm's request to preclude MPDS from introducing evidence or argument relating to alleged damages for additional interior repairs, emergency roof repairs or supervisory construction costs.  State Farm asserts that MPDS never disclosed these items during discovery.  Furthermore, in MPDS's initial and supplemental disclosures, MPDS did not identify these categories of damages nor provide the computation used to arrive at the amounts claimed.  At best, MPDS listed "unknown additional damages."

Pursuant to Fed.R.Civ.P. 37(c)(1), if a party fails to provide such information, "the

party is not allowed to use that information ... to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

The Court declines to take the draconian measure of excluding evidence and/or argument regarding the interior repairs, emergency roof repairs and supervisory construction costs.  These matters were disclosed prior to the April 15, 2011 fact discovery deadline, albeit at Priore's deposition conducted on April 12, 2011.  State Farm had the opportunity to inquire about the amounts and computations of damages; and State Farm could have sought an extension of time to pursue a more thorough investigation had it believed that was necessary.

**Interior repairs**

MPDS makes a claim for interior repairs in the sum of $81,414.49.  Whether the repairs were undertaken *as soon as reasonably possible after the loss*, whether the monetary amount and the necessity of the repairs were justifiably due to the covered damage to the roof of the premises, and whether these constituted "open items" in the parties' contemplation when MPDS conditionally accepted the property damage check for $604,145.23 are all questions for the jury.

**Construction supervision fee**

MPDS claims State Farm should pay $60,000.00 for the cost of construction supervision.  Priore was hired by MPDS to oversee the construction and to coordinate with the tenants who had to vacate and with those that remained in the apartments.  The Court finds that it is a question of fact for the jury as to whether the supervision was necessary and whether the calculation of Priore's time and compensation is reasonable.

**Emergency roof repairs**

MPDS argues that State Farm is in breach for failing to pay an unpaid portion of emergency repairs to the roof and interior in the amount of $32,000.00. MPDS retained Doubrava Construction to take steps, such as laying down a plastic tarp over the roof, to prevent further water leaking. (ECF DKT #45-1, ¶ 13). MPDS contends that Doubrava sent a bill for approximately $50,000.00 which was submitted to State Farm; but State Farm would only pay about $18,000.00. *Id*. Pursuant to the Policy, State Farm must pay the lesser of the cost of replacement or the amount MPDS actually spends that is necessary to repair or replace the damaged property. (ECF DKT #45-5 at 1024).

Priore's Affidavit recites that Doubrava sent MPDS an invoice for approximately $50,000.00; but there is no evidence that MPDS paid that sum. In fact, Doubrava provided State Farm with an invoice for emergency repairs in the amount of $50,041.76. (ECF DKT #60, ¶ 4). Following negotiations, State Farm and Doubrava agreed upon a total payment for emergency repair services in the amount of $20,654.21. *Id* at ¶ 6. On May 16, 2008, State Farm sent MPDS payment in the sum of $20,654.71. (ECF DKT #60-6). Since there is no proof that MPDS paid $50,000.00, or any amount other than the agreed total, State Farm is not in breach of the Policy.

**Alex N. Sill Company fees**

MPDS asserts that because of State Farm's alleged delays and unjustified evaluation of damages, "MPDS had to hire Alex N. Sill Company, [an] insurance claims adjusting firm, to assist in evaluating the interior damages" to the Property. (ECF DKT #73-4). MPDS submits an invoice for appraisal and adjustment services in the amount of $31,404.41. (ECF DKT #73-6). Whether these fees are reasonable and whether they were within the

contemplation of the parties are questions for the trier-of-fact.

**Lost financial reputation and mortgage loan expenses**

In this regard, Priore submits his Declaration (ECF DKT #73-4), stating in part as follows:

> 3. ... Given the refinancing that was available and was obtained by me and my partners regarding other properties, I could have easily obtained refinancing to pay the bank's note had the repairs been done by spring of 2009. Since this was not the case, MPDS and myself suffered severe financial consequences when the bank called the note in default. The note was approximately $17,000,000.00.
>
> 4. Although the damages associated with refinancing the loan were primarily mine, MPDS also shared in some of these expenses, which included hundreds of thousands of dollars to negotiate an extension of one year with the bank.

MPDS, and not Priore, is the insured under the State Farm Policy. Therefore, Priore's personal expenses, lost investments and damaged credit reputation are irrelevant. The assertions that refinancing could have easily been obtained earlier and that MPDS suffered financial consequences amounting to hundreds of thousands of dollars are speculative at best. MPDS does not offer factual evidence creating a genuine issue of fact for the jury regarding this item of claimed damages.

**Attorneys' fees**

MPDS concedes that it no longer has a claim for attorneys' fees. (Plaintiffs' Memorandum in Opposition, ECF DKT #73 at 18).

**Lost Income**

The Sixth Circuit Court of Appeals, in its Opinion (#11-4416, April 24, 2013) in this

matter, found that "MPDS Memphis has conceded that it no longer makes any claim for lost income." (ECF DKT #56 at 8).

### III. CONCLUSION

For all these reasons, the Renewed Motion (ECF DKT #59) of Defendant, State Farm Fire and Casualty Company is granted in part and denied in part.

**IT IS SO ORDERED.**

                                        **s/ Christopher A. Boyko**
                                        **CHRISTOPHER A. BOYKO**
                                        **United States District Judge**

**Dated:  September 23, 2014**